Yes, Your Honor. Yes, Your Honor. You may proceed. May it please the Court, Michael Satras on behalf of Vincent Mosby, I think is the actual pronunciation. Mosby? Yes, Your Honor. Okay. And if I may, with Court permission, reserve a minute for rebuttal. You've got a clock in front of you. Whatever's left is yours. All right. Thank you. Mr. Mosby challenges the denial of parole at his initial parole consideration hearing. Under statute, Penal Code Section 3041, that provides, quote, well, no, the board, quote, shall normally set a parole release date, unquote, at that initial hearing. Now, there is some flexibility in the joints there that does provide an exception, because it's normally, and that exception, under the statute again, is where the gravity of the offense shows that public safety concerns require postponement of the setting of a parole date, i.e., where the prisoner is shown to be a continuing risk such that, again, in the regulatory language, he would present an unreasonable risk if released on parole. Doesn't the statute also mention when there's a particularly cruel or heinous crime that that's a factor the board can consider? Well, the statute doesn't, but the statute provided the board to set rules to implement its statutory command that parole be the rule and denial the exception. And the statute So the board's rules mention that factor. The board's rules say that if there is an especially – if the crime is especially heinous, atrocious, or cruel, that that is a factor that weighs into the determination of whether the prisoner provides an unreasonable risk. The overarching consideration the courts have made clear, though, is that while that's a factor, you would have to show that that risk represented by the offense continues to the present day so that the prisoner is presently – would present an unreasonable risk. Now, Mr. Mosby's murder does not fit within the regulatory language or the statutory language as an especially heinous, atrocious, and cruel second-degree murder. It's in the one where they decided to cap a Mexican, right? There was talk that – That seems quite heinous to me. It is heinous, Your Honor. All murders – Because of the lack of, you know, of a more specific provocation. There was. And there was – there were words exchanged, but it's not a case with an extreme provocation that – that justifies more – that might be more just of a justifiable incident preceding a murder. If you have extreme provocation that – that kind of justifies the rashness of the act that was taken – that was undertaken here by Mr. Mosby and his companion, you would have a manslaughter. So we have a murder. And you're right, Your Honor, it's not particularly substantial provocation. But that – How long has he been in prison now? He – How long has he been in prison? Has been in prison now something like 15 years. But we are talking about the initial hearing and a statute that says you're entitled to a parole date at the earliest possible time. This was a remedial statute designed to provide for the early setting of a parole release date so that you would have predictability and uniformity of prison terms. This was first-degree murder, right? This is second-degree murder. Second-degree. And, you know, you do have, though, Your Honor, some particular provocation. There was evidence of some talk about let's cap a Mexican. It's not clear exactly what that means. Maybe shoot at them, not necessarily kill them. But they – they didn't undertake that until there was this confrontation with a Mexican-Hispanic guy who's yelling racial epithets at him, nigger, and also wielding a golf club. And so they do act rashly and jump in the car and proceed to – to drive by this fellow and – and shoot at him. It wasn't just drive by them. They went out looking for him, didn't they? Well, they went out to – to – he took off. They went out to find him, yes. And – and – and it's the other fellow, remember, the companion, who does the actual shooting. And whether there was any intention even on his part to kill, two of the shots go wildly. One does hit so that Mr. Mosby has his conduct, if you – if you're trying to gauge the potential danger he presents by determining whether he's – his murder is atrocious and cruel, but especially heinous, atrocious, and cruel, to fit within the exception that he presents an extraordinary risk among murderers. He doesn't. He's not the actual killer. He – I'm not going to – Well, I think there's – go ahead. Go ahead, Judge Kaczynski. You know, I'm not entirely sure what your Federal claim is here. Are – are you claiming he was entitled as a matter of Federal constitutional law to a parole date the first time he comes up for parole? He was, yes. And there was an – and it was an arbitrary denial. I'm sorry. That's your claim. That is the claim. But it's kind of a two-part claim, Your Honor. If you let me finish the question, maybe you'll be able to answer it more accurately. Or do you want to guess? I would prefer to hear your question. You didn't act like you were. Is your claim that he has an entitlement to a parole date the first time he comes up? That's your claim? His individual case entitled to him – Yes or no? Yes. Where do you see that in the – I mean, due process is based on rights created by State law. And where does it say in State law that you're entitled to a date the first time you come up? In Penal – in Penal Code Section 3041. It states – it charges the parole board. What does it say? It says the parole board shall normally set a parole date to a prisoner at his – Normally. Yes. Yeah. You sort of glossed quickly over the word normally. Oh, no. Normally is key. That's – that's a facet of the due process claim, because it establishes that as the rule, so that he has to – It seems to me what you – what you appear to be saying is that there's sort of a presumption that any time someone comes up at the first hearing, he's entitled to have a parole date set. In other words, unless there are – you seem to say that unless there are exceptional circumstances, a prisoner is entitled to have a parole date set at the first hearing. Is that basically what you're saying? Yes, Your Honor. What I quoted was subsection A, shall normally set a parole date. Then subsection B says specifically, shall set a parole date unless – and that's where the exception comes in. Unless what? Unless the gravity of the prisoner's crime shows that setting a parole date for him at that point would threaten public safety. And that's a decision to be made by the parole board, right? Yes. Within their discretion. And they have – Subject to the some evidence, if we have any review at all, it is for some evidence. So we ask the question, do we not? Is there some evidence here that supports the parole board's decision that he falls under the unless clause there? Yes, that's right. That he falls within the exception. Now, under Superintendent v. Hill and Sass, it's – it violates due process if there is not some evidence or it is otherwise arbitrary. And that's where the second facet of Mr. Mosby's claim is. Because independent of the question of whether there is some evidence, the board has acted arbitrarily because his claim is that despite this language where – that sets up a parole grant as the rule at the initial hearing, the parole board arbitrarily disregards that statute in every case. I understand you're making that claim. I don't want to – we can talk about it. Okay. But let's go back to the – so here's your alternative claims. If there is not some evidence, then your client wins. True. And if you can make out this other claim for systemic ignoring of the statutory text, then he also wins, right? Correct. So let's talk about the first part, the some evidence. You've read the State's brief, right? Yes. Look to me like there was some evidence. You don't really dispute that, do you? Well, I do dispute that because it's like some – Why don't you make it quick? What do you want to say on that point? Because it's not a second-degree murder that is exceptionally – You read Ions? Yes. Your guy is worse than the Ions guy, isn't he? Excuse me? We have a colleague and I, right? You remember the facts of Ions? Yes. Ions was – Tell me about it. That was where there was – Ions was the killer. He was the murderer. He shoots this guy, and the guy's down on the ground, and that's not good enough for Ions, so he comes and boom, boom, boom, stabs him as well. Especially heinous, atrocious, and cruel crime. Compare it to Mr. Mosby, who's driving. Doesn't even do the actual killing. There is some provocation. Obviously, it's insufficient to justify the crime or necessarily substantially mitigate it, but it withdraws it from the notion that this is an especially – You have an up-throw battle on that one, I'm telling you. So let's get to your systemic claim. Yes. Why can we hear that? Why is it not a matter to be raised in State court and for the State courts to – if the parole board is misapplying State law, I mean, as you say – I mean, I have no idea. I have no independent knowledge of whether they do or do not have this pattern that you allege. Isn't this a question to be raised by the State court? I mean, they supervise the application of State law. Yes. And you can say, look, the parole board, the State agency, paid for by the taxpayers of – this is California, right? These are all California. Yes, Your Honor. Of the State of California, are misapplying State funds and they are misusing the authority given to them by the statute by failing to follow State law. Right. Why isn't this a claim that at least in the first instance and perhaps in the last instance as well ought to be raised in State court? You've never raised this claim in State court. Yes. This claim is exhausted. There's been no suggestion by the State that this is unexhausted. This was part of the State petition. It's part of this Federal petition. You made the claim in the State petition of the systemic – the systemic misapplying? Yes. Yes, that's the way I understand it. There's no exhaustion issue here. The claim has been, look, this statute says this. And to say it's been misapplied is certainly an understatement. It's an arbitrary disregard of the statute. That's the claim that the parole board pays no attention to the statute. Well, maybe I'm misunderstanding, but I thought the claim raised in the State courts only had to do with some evidence review. You did raise – you were the lawyer? No, I was not. In fact, I'm the lawyer here at this point, Your Honor. Okay.  Yes. And it's your understanding, you're representing to us that this issue of systemic failure to apply the terms of the statute was raised in the State habeas procedure? That's my understanding. Findings and recommendations – yeah. You know, that's a weasel word. I mean, you either know or you don't know. You've read it and you've seen it and you can tell me it's there. Or you haven't or you can't or you don't remember. But I – Okay. Well, I cannot tell you 100 percent, but from everything I do know about the case, yes, it was raised and there was no relief granted on it. Tell me 90 percent? There was a – yeah, 99 percent. There was a summary denial of the petition. There hasn't been any suggestion in the Federal district court which denied – all the Federal district court said was the petitioner hadn't sought discovery on that issue in State court. And that's because you don't get discovery in State court until in order to show cause issues. And this petition was summarily denied. What is your Federal claim on that systemic – I mean, this is a misapplication of State law. State law – I mean, let's say what you're saying. Yeah. The parole board, every time it comes up – I mean, you know, if we were to look at it, for all of its record, it never, ever grants parole on the first – and let's say we find out there's really a policy never to grant parole the first time around. Or practice. Let's say – let's say that's the case. Yes. So what's the Federal purpose? Well, that's the essence of due process, to protect against lawless State action where the – due process for parole purposes is – I've never heard that term for due process. The essence of due process – Law – a failure to follow State law? I mean, we're usually not concerned with whether or not States follow their own law. They are free to follow their law. They're free to interpret their law. They're free to ignore their law. We, you know, we – And that's for the State courts to look at. That's the job of the State courts, to determine whether State agencies are following State law. But if it gets to the point – of course, in the parole context, your liberty interest in parole is defined by the State law. It's defined by the statute that says you should normally be granted parole at the first hearing. If the State actors substitute their own rule of man for the rule of law, that's the essence of arbitrary action that deprives the California prisoner of his due process interest as defined by the State. And if the State isn't going – Well, what is this interest that's defined by the State that can then be protected by Federal law? You know, if you're right, it says normally. Yes. But what that means is it doesn't necessarily apply to any one case. It doesn't give you as an individual a right. It may mean that out of 100 people, 55 or 60 or 65 should get it, but no single individual can point to an entitlement to get it in his own case. So where is the Federal – where is the property or liberty interest that – to which due process can be applied? Okay. Well, let me try to see if I can – These things are individual. There's no sort of aggregate rights. Okay. Let's say the law was parole board, you shall grant nine – excuse me. Where? In the State. Let's say the law where? State law. Go ahead. Okay. Was parole board, you shall grant parole in 90 percent of the cases, and we're going to give you the power to decide those 10 percent where you can – Let's say it's 99 percent. So what? You as an individual don't have a right to – you know, you have a 99 out of 100 chance of getting it or a 99 out of 100 chance of getting it. That's not – that's no entitlement. And then let's say the parole board decides, no, we're not going to follow that law. We're just going to deny everybody parole because we think murder – Well, you're just restating my question. Yes. That is a due process violation. Why? Because it's been – it's an arbitrary disregard of the State law. I mean, Hicks v. – You can disregard the States, can disregard State law all they want. It's not cited in the brief, but I think Hicks v. Oklahoma is your best case for the notion that a State cannot just arbitrarily deprive you of your State-created interest in life or liberty. Thank you. Okay. We'll hear from the State. Good morning, Your Honors. May it please the Court. Julie Garland, Senior Assistant Attorney General for Respondent Appellee. This case is not about whether Mr. Mosby should be paroled or whether the State parole system is in some way dysfunctional. This case and the hundreds of similar cases pending in the California federal courts should be about whether federal courts have any authority to review the evidentiary sufficiency of a State parole decision. Following the Supreme Court's recent decision in Kerry v. Mousladen, the answer to that question is no. Counsel, I have a question for you on that. I think it's a pretty good argument that Irons extending the Hill standard to parole is inconsistent with Mousladen. But Irons was decided, as I understand it, after Mousladen. So our panel does not have, in that sense, an intervening Supreme Court precedent that would permit us to disregard other circuit precedent. So does that mean only an en banc Ninth Circuit court could say that Irons is wrong? Possibly, Your Honor. Irons was actually decided after Mousladen. However, Mousladen was not briefed or argued in Irons. And I will say there is a petition for a hearing en banc on this issue before the Court in Irons. So, yes, this issue may be resolved in Irons. Well, I think Judge Gould was asking a different question. Given that Irons is now on the books, there's nothing we can do about it. Mousladen is not intervening Supreme Court opinion. Sass's Law of the Circuit, you then have Mousladen. And one could say, well, it's been overruled by Mousladen under Milosevic's GAMI, which says if you've got an intervening Supreme Court opinion, we can deem prior and inconsistent state circuit law overruled. But then along comes Irons and reaffirms Sass in that regard. And Mousladen is not an intervening Supreme Court decision. It doesn't stand between us and Irons. So we're bound by Irons, right? Well, under — Did the State here file a petition in Irons? Yes. Okay. Go ahead. Because the petitions for a hearing are pending, both sides actually filed them in Irons. And they are pending. And, therefore, the finality of Irons is not necessarily complete. But there's no point arguing that issue here because we're going to be governed by Irons, right? So, you know, you can spend your time arguing this on the grand issues about whether or not we have authority on it. But our circuit law is that we have authority. There's nothing we as three-judge panel can do about it. Well, actually, under the context of the AEDPA, circuit law is not necessarily binding unless it's consistent with Supreme Court authority. Well, but circuit law interpreting AEDPA is binding. This Court held in Shaw v. Turhan, and I'm not sure if it's in the briefs, I apologize, but specifically addressed that issue, that the binding law in the context of AEDPA is that which the Supreme Court has established. But not circuit law that actually interprets the scope of our view under AEDPA. That is binding. Otherwise, you have every panel interpreting AEDPA on its own. And, again, that's beyond the scope of what the circuit should be doing. And if the Supreme Court hasn't said that. If you want to spend your time talking about this, you can go ahead. I mean, you're down to six minutes. And you've so far said nothing that's going to help you in this case, as far as I can tell. But go ahead. I mean, we could hold this case until Irons is final on those other petitions. But assuming that we don't want to do that, like as one judge on the panel, I think we have to follow Irons, even if we think there's tension with Muslanin. So what might be helpful just to let us know whether we have to grapple with that issue is what is the state's position, assuming the sum evidence standard applies. What is the sum evidence that would be pertinent here? And I had a checklist of the heinous nature of the crime, the fact that he had not gained additional education degree at this stage, and that there's some unstable social history of escalating crime. It's not like he's no evidence he's doing terrible things in prison. All right. So why don't you review what the evidence is that would justify the denial by the parole board if we apply that standard. Okay. Thank you, Your Honor. Yes. Under the sum evidence standard, as the Court has, Judge Gould has mentioned, there are significant factors under the California statute that supports the denial of parole here. And even under the sum evidence standard as applied by Hill and established by Hill, the Court need not and should not engage in any kind of reweighing, which is exactly what Mr. Mosby is asking this Court to do. California is entitled to deny parole for whatever reason they have established is relevant. And in this case, they've established that the crime is the relevant factor. His crime was a senseless crime. You know, few murders are senseful, you know. Everything was said about this crime could be said about just about every murder, perhaps about every murder. And conversely, I don't know how you could have a murder about which, you know, when would you ever have a situation where these factors are not applicable when somebody's committed a murder? Or, in fact, most violent crimes. That's correct. Most violent crimes are heinous, obviously. But under federal due process standards. Well, if the State wanted to say no parole, it would say no parole. These things are heinous, and that's the end of the matter. Obviously, the State itself has systems that says you do get parole on occasion. In fact, if you look at the statute itself, it seems to suggest that you get it in most cases. The legislature must have understood that murders are heinous. So what is it about this crime that makes it so different from anything else? I mean, if you recite things that could be said in every case, what is the point of the standard at all? Well, under federal due process, this is a very minimal liberty interest. It's a hope at most. And, therefore, the process and the requirements are very minimal. And as this Court ---- What is it about this crime that supports some evidence? I mean, sure, it was a serious crime. But, of course, murders are always serious. I mean, the guy wasn't tortured. They didn't beat him to death. They didn't make him beg for mercy. They didn't plug his fingernails. I mean, you know, it was a murder. I mean, it was clearly a terrible crime. But all murders are terrible crimes. Absolutely, Your Honor. And the State need not prove that any of those things have occurred to deny parole. The State has the discretion to deny parole. They review that denial. You know, you're not getting into the spirit of things. You still want to argue that we don't have any business reviewing it, and you've now spent almost nine minutes doing that. Do you want to speak at all to the sum evidence standard, or do you want to just sit down and make no argument on that point? As the State court found, there was some evidence to support this. I understand the State court found it. And what I'm asking you is to explain to me what it is in this case that supports that finding. As Judge Gould has pointed out, the record is there's ample evidence. He had a prior criminality. He had this was a crime that he could have avoided. He went out. He drove the car. What was his prior criminality? He had some assaults and some batteries. He was 16. Is this the guy? That's correct. I believe there was an assault with a deadly weapon. He, again, he never corrected his behavior from that. He had an escalating pattern. He had one prior involving this assault when he was 16. I thought it was a fist fight. There was a deadly weapon? There was a deadly weapon involved? I believe there was. Yeah. What does I believe mean? Do you know, or you don't know? I'm not listening.  I apologize. I'm getting Mr. Hayward and Mr. Mosby confused. I apologize. See, this is what you're here to argue. I mean, I... It was, I'm sorry. This one was the one, it was a fist fight where he admitted he did significant injury on his victim. Okay, so there was no deadly weapon, right? You're right. I apologize, Your Honor. Okay. So he has a fist fight when he's in high school or should be in high school. And then he has this murder, which is very serious, of course. But that strikes me as right in the middle of plain vanilla as any violent crime can be, not to minimize it at all. I mean, he has served 15 years in prison, so it's not like he's asking to be let go with no punishment. The question is, what is it about this murder that fits the standard? Where is the sum evidence here? The sum evidence is under the regulations, they found the factors. They found the unstable social history. They found the prior criminality. They found the heinousness of the crime. And a regulatory factor is one of them is trivial motive. If there's an unstable social history, you say he's got an unstable social history. If he comes from a Beverly Hills home and kills mother and father with a shotgun, then you say, well, he has every advantage. And still he goes and he... You know, these factors can be played either way. I just have a hard time seeing any kind of sort of rational distinction one can draw in looking at these cases. The reason I mention those is that is how the State has decided to review its own, the inmates for parole suitability. Those are regulatory factors that this... Isn't your real argument that the thing that makes this crime unusual is that it began, they went out and hunted for this fellow for... Because they had a quarrel with him. So they went out and hunted for him. And then when they found him, they just shot him. But this is not... Sure, they didn't torture him. They didn't do these terrible things. But in terms of criminal culpability, it's a range. And this is not a case of somebody who got into a terrible fight with his wife and shot her. This is a case where they went out to commit a... To kill someone. They said earlier, didn't they, that let's get a max of something like that at one point. And that this... However one decides, wherever one puts this in the continuum of culpability, the board was justified in saying this falls on the side where he does still present a danger to society. Those things are all true, Your Honor, but that is not our argument. Our argument is that is not... I'm sorry? You say that is not your argument? That is not our argument. Then what is your argument? Our argument is none of that should matter in the Federal courts. Even under the Some Evidence Standard of Review, addressing each of those issues is a reweighing of the facts and the evidence. And that is not proper, even if Some Evidence is the standard. The Sass Court probably did the closest review to Hill that we've seen in a lot of Federal courts. In Sass, what they really looked at was whether or not the board exercised its discretion. And finding that the board did exercise its discretion, the review ended there. To look at the fact... I'm not clear on this. Are you saying that in this kind of a case on Federal habeas, we have no authority to consider and even determine whether there was any evidence? Suppose we were to conclude that there was no evidence. We couldn't do that, you say? Not under AEDPA, because Some Evidence shouldn't be the standard. I understand the Court doesn't want to address that, but even under the Hill Some Evidence doesn't have anything supporting the decision. And looking at the facts of the crime, deciding whether it's heinous, looking at a spectrum of severity or gravity is not within the Some Evidence standard. That's a reweighing, and that's what's not proper. What you seem to be saying is that the determination whether there was some evidence is a matter committed to the exclusive jurisdiction of the parole board, and that it's beyond the authority of the Federal courts even to consider whether the evidence or whatever evidence there was or no evidence is sufficient. You say we have no authority to consider that. Based on the fact that Some Evidence is not clearly established in the parole context, that is true, even though under Some Evidence that any looking at the facts of the crime is a reweighing, which Hill explicitly says is not proper. So the answer to the Court's question, I would say, is, yes, we do not believe Federal courts should be involved in weighing the factors and weighing the dangerousness of the State's parole inmates. Okay. Counsel, one of the parole board's factors is if it's a particularly heinous or cruel crime. So I'm having trouble understanding why Judge Friedman's comments aren't right on point on that, because it seems to me that one thing we look at is there's some evidence that this crime was particularly heinous. And so we should look at that also on the criminality, although maybe he didn't assault someone. I thought there was evidence that he had made some sort of martial arts weapon. I'm not sure what they call them. Nunchucks, I think. Nunchucks, yeah. And so there is evidence in the record of escalating criminality, first making a deadly weapon, then whatever other problems there were, and then the shooting. So, I mean, you have some evidence in this record I would think that you could argue. So I'm not sure why your position is to not argue the some evidence there is. Well, Your Honor, we believe that the record is clear on the some evidence. And I want to clarify what you're saying. But you can't have it both ways. If you want to assert those things, then you're going to have to answer my questions about whether those things count. So if you don't want to answer my question and say it's none of our business, then you could take that position. But you can't have it both ways and say we think the record is clear, but I don't want to talk about it. There's no point in you showing up in court if you're going to do that. If your position is, look, we don't have any business reviewing it, that's fine. We'll take that. And there's nothing further to say. I understand, Your Honor. And I apologize if I'm seeming like I'm avoiding the question. I'm not trying to. I'm trying to put it in the context of what AEDP says. And I will be happy to argue the facts of the crime are there. Unfortunately, I don't have time. I would like to conclude, if I may. I think you have. Thank you, Your Honor. We'll give you a minute for rebuttal, if you wish to take it. Thank you, Your Honor. The fact is this escalating pattern of criminal behavior is not part of the regulatory criteria. The regulatory criteria provides that there must be a significant record of prior pattern of violence. And what we have here is a minor criminal record as characterized by the counselor in this case. And you can find that in the excerpts of record at 46. You have a finding that, by the counselor, that he would, Mr. Mosby, would present a low risk. You have that, a consensus of that with the psych evaluations, that he would present a low risk and would be a good citizen. I thought it was low to moderate. Excuse me? I thought it was low to moderate. I believe it was. I'm getting my cases confused. Now we are getting the cases confused. That will be the next one. This was a low risk. In fact, there was two different sites that found, in essence, this guy is going to be due well. The only unusual aspect of this case is the degree of suitability that Mr. Mosby presents. He's been completely disciplinary-free. You have the psych saying he stands above and beyond the normal prisoner in terms of his maturity and change since the offense. I think the best argument that can be made is the one that Judge Friedman made. But it just doesn't reach the level, Your Honor, of especially heinous, atrocious, and cruel, because just because it's not the most mitigated murder doesn't mean it fits within the exception. And the bottom line here is we have a system. As Your Honor said, it looks like most prisoners should be given parole, but it's turned into a farce and a sham that does have due process implications because not a single prisoner at his initial hearing gets a parole date that he --- What's your evidence? What's your basis for that statement? I don't know if it's true or not. I know nothing about the California prison system, but you tell us that not a single prisoner gets parole the first time. What is the basis of that? That's the allegation. Oh, that's the allegation. And there was an attempt to prove it by asking for the stuff. Wait a minute. But before you -- this was an allegation made by counsel in the district court? It was in the district court, Your Honor. Well, then, if counsel made such an allegation, he had to have some basis for it. He can't just make an allegation, and then they say, what basis do you have? They say, oh, I'm waiting for discovery to see if I can prove it. I mean, you can't just make an allegation that the parole board is totally misbehaving and refusing to grant parole in every case in the first instance on the basis that you think you can find some evidence of it. Well, the records are in the possession of the State, and the discovery was to seek to obtain those records. And that's why, at the very least, the Court should reverse and remand to permit the district court to -- Counsel, what's your best Federal authority that would say that if the State was engaged in the practice that you've said, that your client would be entitled to relief? To give you an example or a hypothetical, let's assume your client was -- I think his name was Jeffrey Dauper, the guy who had body parts in his refrigerator. And let's say he'd only been imprisoned, you know, for so many years, and he comes up for parole, and he's denied his first parole opportunity, and there's a lot of Yes. But the State's disregarding its law, what's the Federal authority that would say that Jeffrey Dauper in that setting would get relief? I think it depends. And I'm not equating your client with Jeffrey Dauper, but just I'm taking an extreme example to try to understand why it would give your client relief if this was happening. Well, there it depends on the type of relief. In that case, it may not be that Mr. Mosby is entitled to parole as a matter of law because there's an arbitrary disregard and nobody's getting parole, but that would be relief that would have to be fashioned by the district court that requires the parole board, hey, start following the law, start normally granting parole, and consider Mr. Mosby under standards that does pay – that do pay due regard to the statute. That would be one type of relief. Okay. It would seem like that might be a – or possibly that kind of relief could be sought in a different type of action, seeking declaratory and injunctive relief as opposed to a habeas claim about denial of parole. I think you're right there. I think there's a crossover, Your Honor, but I don't think the defendant is or the that would be flexible and sufficient to address that due process violation. But a civil rights action would be an alternative way to go. But ultimately, the argument is if the law was followed, Mr. Mosby would be granted a parole date and would have a uniform, proportionate term set for him as the legislature envisioned. So if nothing else, that would be the ultimate relief requested. Thank you. Okay. The case is signed. Thank you. Thank you.
judges: Friedman, Kozinski, Gould